1647

William Douglas MADISON, Respondent v. GRAFFIX FABRIX, INC., a South Carolina Corporation, Appellant.

(404 S.E. (2d) 37)

Court of Appeals

*Wm. Howell Morrison* and *Trent M. Kernodle,* both of *Holmes & Thomson,* Charleston, *for appellant.*

*Kenneth W. Thornton, Jr.,* and *William S. Duncan,* both of *Law Offices of Kenneth W. Thornton, Jr.,* Georgetown, *for respondent.*

Heard March 18, 1991; Decided April 22, 1991.

Rehearing Denied May 21, 1991.

SHAW, Judge:

Respondent, William Douglas Madison, sued appellant, Graffix Fabrix, Inc., for wages and an accounting. Graffix answered denying any monies were owed and counterclaimed asserting Madison failed to abide by his oral agreement to pay certain debts of others. The court directed a verdict for Madison on the counterclaims and the jury returned a verdict for Madison for $23,366 which the court trebled. The court also awarded Madison $23,366 in attorney's fees. Graffix appeals. We affirm.

This action arose from an employment contract wherein Madison was employed as Vice President of Sales for Graffix. Madison brought two large customers to Graffix and sales increased from $788,333 in 1986 to $1,829,887 in 1987, and to $3,311,616 in 1988, the year in which Madison's employment was discontinued. The sales to one of these customers represented approximately 70% of Graffix's business with the other customer accounting for most of the rest.

Over time, Graffix became concerned it was too dependent on one major customer and directed Madison to begin prospecting for new customers. Madison's relationship with Graffix deteriorated and the parties began negotiations whereby Madison would be given a position as Vice President of Product Development or as an independent sales representative. Graffix began sending Madison a series of letters and memos regarding these negotiations but no new position transpired. These communications included the following language:

... I must accept your resignation effective June 30, 1988.

\* \* \* \* \* \*

The old contract ends as of 5:30 today, so we really need to persue [sic] this and get the new one signed.

\* \* \* \* \* \*

Until July 1, 1988 please be advised that your original employment contract is still in effect and will be until 7/1/88.

Madison testified he never resigned from Graffix nor was he given any reason or cause for an attempt to terminate him. He further stated he never received any notice of termination by either certified or registered mail and Graffix failed to pay his salary after June 1988 and his commissions after July 15, 1988. He thought the attempt to terminate him was because Graffix had gotten the customers they wanted and didn't need him anymore.

Paragraph 13 of the employment contract between the parties provides in pertinent part:

> *Termination.* This agreement and the employment of the Executive hereunder will terminate . . . at the option of the Company for cause immediately upon written notice to the Executive. . . .

Paragraph 14 states:

> *Notices.* Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered or certified mail. . . .

Graffix raises several issues on the sufficiency of the notice given to Madison. It argues that the contract provision on notice by registered or certified mail was not exclusive, but merely one means of giving notice. It further argues that Madison should not have prevailed because he had actual notice. However, Graffix ignores the possibility that the jury found Graffix did not have cause to terminate Madison. Whether or not Madison performed his obligations under the contract and whether or not Graffix had cause to terminate him were issues properly before the jury. Because

the jury's verdict could have easily rested on the issue of whether cause existed to fire Madison, we need not address the notice issue. Likewise, our holding disposes of Graffix's contention that the wages should not have been trebled under S.C. Code Ann. § 41-10-10 because of a good faith dispute over the wages. *See* Sup. Ct. Rules, Rule 4, § 8 and *Liberty Mutual Ins. Co. v. Gould,* 266 S.C. 521, 224 S.E. (2d) 715 (1976) (reviewing court may affirm the trial court on any ground appearing in the record).

Graffix also argues the trial judge erred in submitting the issue of contract ambiguity to the jury because there was no ambiguity. A reading of the record reveals the issue of ambiguity arose in connection with the notice provision of the contract. As previously noted, the jury did not necessarily base its decision on the notice issue. Further, while Graffix originally claimed no ambiguity existed, it later reversed its position and argued ambiguity did exist.

Graffix next contends the trial judge erred in failing to disqualify Madison's attorney based on a conflict of interest. Graffix moved to disqualify the attorney on the basis that his law firm had represented Graffix in a previous action between Graffix and another employee. This motion was supported by an affidavit of a Graffix executive stating the previous matter involved allegations that a former employee engaged in soliciting and enticing employees of Graffix to terminate their relationship with Graffix and become employed by a direct competitor. Madison's counsel informed the court that there was no conflict of interest and the trial judge denied the motion.

Generally, an attorney cannot, on termination of employment, represent one whose interest in the transaction is adverse to that of his former client. However, an attorney is not prevented from representing a subsequent client against a former client, where the duties required of him do not conflict with those required in the first employment. The test of whether the attorney's employment is inconsistent with his duty to a former client is whether acceptance of the new retainer will require him, in forwarding the interest of the new client, to do anything that will injuriously affect a former client in any matter in which he formerly represented him, and also whether the attorney will be called on,

in his new relation, to use against a former client any knowledge or information acquired in the former relationship. 7 Am. Jur. (2d) *Attorneys at Law* § 186. In the case at hand, the dispute involves a question of whether Graffix breached its employment contract with Madison in terminating him. There is no evidence Madison's attorney would injure Graffix in connection with his former representation of the company. Nor is there any evidence Madison's counsel would be called upon to use any knowledge acquired out of the former relationship against Graffix in the present matter. The fact that counsel previously represented Graffix in a dispute with a former employee is insufficient by itself to establish cause for disqualification.

Graffix alleges error in the award of attorney's fees in the amount of $23,366. It is undisputed that S.C. Code Ann. § 41-10-80(C) (Supp. 1990) allows for the recovery of reasonable attorney's fees within the court's discretion. Absent an abuse of discretion, such an award will not be set aside. *D.A. Davis Construction Company, Inc. v. Palmetto Properties, Inc.*, 281 S.C. 415, 315 S.E. (2d) 370 (1984). Reviewing the record before us, we find no abuse of discretion.

Graffix argues it is entitled to a new trial because the court failed to advise that a jury panelist was involved in litigation with Madison's counsel and the unidentified juror should have been disqualified. We disagree.

The record indicates the jury panel was questioned as to whether anyone was a client of either attorney, to which there was no response. The court, after excusing the jury panel for lunch, informed Madison's attorney that one of the jurors on the panel was involved in some type of litigation where he represented one of the parties. He further stated the gentleman represented that it no way would interfere with his ability to give either party a fair trial. The court then found the juror in question qualified. Graffix' attorney was not present at the time as he had not yet arrived.

As correctly pointed out by respondent, Graffix failed to properly raise the issue of juror disqualification. Rule 60(b), S.C.R.C.P. provides for relief from final judgment upon certain grounds; however, it further provides leave need not be obtained from any appellate court *except* during the time an appeal from the judgment is actually be-

fore the appellate court. There is no indication Graffix made a Rule 60(b) motion nor obtained leave to make the motion while the appeal was before the appellate court. Further, it is impossible to determine whether the unidentified panelist became a juror in this case and, at any rate, the record indicates he claimed he could give either party a fair trial. Therefore, Graffix has failed to show that it was in any way prejudiced. *See Cartee v. Cartee*, 295 S.C. 103, 366 S.E. (2d) 269 (Ct. App. 1988) (appellant bears the burden of showing both error and prejudice).

Finally, Graffix challenges the trial judge's direction of verdict for Madison on Graffix's counterclaims for the debts Madison allegedly agreed to pay. Graffix claimed Madison had orally agreed to guarantee a $20,000 debt of his former company and the debt of an individual Graffix was doing business with. Madison denied agreeing to pay any such debts. The employment contract, which contained a merger clause, made no mention of such an agreement. There is no evidence in the record that Madison ever signed anything indicating he would pay or guarantee these debts. The court granted Madison's directed verdict motion on both alleged debts.

While generally an oral promise to pay the debt of another is invalid when not in writing, an exception exists where the promise is made as a part of a transaction where the main purpose and object of the promisor is not to answer for the debt of another, but to subserve some purpose of his own. *General Electric Company v. Gate*, 273 S.C. 88, 254 S.E. (2d) 305 (1979). An exception also exists where the agreement to pay the debt is part of an original undertaking between the parties and it is not collateral to the origination of the debt. *Id.* 254 S.E. (2d) at 307. In light of the evidence before us and considering the merger clause contained in the contract, we find no exception exists in the case at hand.

Affirmed.

GARDNER and BELL, JJ., concur.